IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GOLDEN ARROW RESEARCH, LLC<br><br>  Plaintiff,<br><br>  vs.<br><br>ANCESTRY.COM DNA, LLC<br>d/b/a FOLD3<br><br>  Serve at:<br><br>CT Corporation System (Reg. Agent)<br>1108 E South Union Ave<br>Midvale, UT, 84047, USA<br><br>  Defendants | Case No.    4:25-cv-00582<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

COMES NOW Plaintiff Golden Arrow Research, LLC, along with assigned counsel, and for their Complaint against Ancestry.com DNA, LLC d/b/a Fold3, alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Golden Arrow Research, LLC ("Golden Arrow") is a genealogy research company owned and managed by Geoff Gentilini. The company specializes in family, military, and historical records.

2. Plaintiff Golden Arrow is a "copyright owner" who holds "exclusive rights" to the "copyrighted work[s]" pursuant to 17 U.S.C. §§ 101 and 106.

3. Defendant Ancestry.com DNA, LLC d/b/a Fold3 ("Ancestry") is a company headquartered in Lehi, Utah and conducts business globally.

1

4. Defendant Ancestry was founded in 1996 and is currently the global leader in family history and consumer genomics. Through ongoing innovation in DNA science, digitizing historical records and automating research, Defendant Ancestry helps its customers "create a more complete family portrait that continually yields new discoveries as science and technology advances."

5. On or around October 2010, Defendant Ancestry acquired iArchives, a Utah based digitalization of records service for $31.6 million.

6. By incorporating iArchives into its corporate structure, Defendant Ancestry operates a network of genealogical, historical records, and related genetic genealogy websites, including but not limited to Fold3, a service that provides access to military records.

7. Plaintiff is informed and believes, and thereon alleges, that Defendant unlawfully published Plaintiff's copyrighted works without Plaintiff's express or implied authority, by the method of a license.

8. This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act of the United States, 17 U.S.C. § 101, whereby the Defendant Ancestry violated Plaintiff Golden Arrow's exclusive rights as copyright owner pursuant to 17 U.S.C. § 106.

9. This Court has subject matter jurisdiction over Plaintiff Golden Arrow's claims for copyright infringement pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

10. This Court has personal jurisdiction over Defendant Ancestry because:

    a. Defendant Ancestry is a business entity incorporated in the State of Missouri;

    b. Defendant Ancestry's acts of infringement complained of herein occurred in the State of Missouri; and

    c. Defendant Ancestry has caused injury to Plaintiff Golden Arrow and its intellectual property within the State of Missouri.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b) because:

    a. Plaintiff Golden Arrow resides in this judicial district;

    b. A substantial part of the events giving rise to Plaintiff's claim occurred in this judicial district;

    c. Defendant Ancestry has systematic and continuous contacts with the State of Missouri, and in particular the Eastern District of Missouri.

12. Alternatively, venue is also proper pursuant to 28 U.S.C. § 1400(b) because Defendant Ancestry committed the acts of infringement and has regularly conducted business within the judicial district.

## FACTUAL ALLEGATIONS

13. On June 28, 2020, Plaintiff Golden Arrow created an original video and blog post for its website.[1] The post included an extended description of the process of acquiring and analyzing "Morning Reports."

14. Morning Reports are company level, daily reports which document status changes for assigned personnel of all Army units from WW1 through Vietnam.

---

[1] Accessible at https://www.goldenarrowresearch.com/morning-reports-locate-army-veterans/.

3

15. All of the content for the post at issue was created entirely by Plaintiff Golden Arrow, from the video through the text and the accompanying visual references and charts.

16. On April 1, 2022, Plaintiff Golden Arrow's blog post was the top ranked search on Google for "morning reports us government records" and other similar keywords, as shown in the screenshot below.



17. On April 12, 2022, Defendant Ancestry employed an automated web scraper that accessed the entire content of my client's site. This is demonstrated by a statistically anomalous increase in the number of users, from an average of 5.6 users per day to 356 on April 12.



18. In addition, on that day, all of the users used the same web browser, Chrome.

19. Assessing the days from April 10 to April 12, of the 367 total viewers of the site, 251 of the average session durations were integers without decimal points. Because only 1 of 100 possible session durations would end in .00, the 68% figure suggests that significantly more of the users had session durations ending in .00 than would be expected from true users.

20. Finally, of those users, only 47 were from the United States, as shown below. That is highly suspect for a site that only hosts content related to United States government records.



A. **Fold3 reproduced some parts of Plaintiff Golden Arrow's site verbatim and incorporated the rest of the site into their data.**

21. On April 27, Defendant Ancestry's Fold3 sent out an email that reproduced, in full and without attribution, Plaintiff Golden Arrow's blog post.



22. Upon information and belief, Plaintiff Golden Arrow's entire site was scraped and included in Fold3. In particular, Plaintiff Golden Arrow identified a list of 9 databases that are located on Defendant Ancestry's website and that each have information contained within them that could only have originated from Plaintiff Golden Arrow's site.

23. Fold3's site contained descriptions of particular Morning Reports that originated from Plaintiff Golden Arrow's site.

24. Plaintiff Golden Arrow emailed Fold3 about the unauthorized copying. The descriptions were then removed.

25. Given the high correlation between the number of unique visitors on April 12, 2022 and the total number of pages on Golden Arrow's site, the removal of the subsequent descriptions from the Morning Reports, and the verbatim and flagrant copying shown in the April 27 email.

26. Upon information and belief, Defendant Ancestry scraped Plaintiff Golden Arrow's website.

27. Plaintiff Golden Arrow's blog post and video have been registered with the United States Copyright Office. Plaintiff Golden Arrow holds valid copyrights to both of the works at issue. *See* Exhibits 1-2, Certificates of Registration.

**COUNT I: COPYRIGHT INFRINGEMENT PURSUANT TO 17 U.S.C. § 501**

28. Plaintiff Golden Arrow incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

29. Plaintiff Golden Arrow's blog post on its website is a literary work and is considered an original work of authorship fixed onto a tangible medium of expression, in accordance with 17 U.S.C. § 102.

30. Plaintiff Golden Arrow's Morning Reports video on its website is an audiovisual work and is considered an original work of authorship fixed onto a tangible medium of expression, in accordance with 17 U.S.C. § 102.

31. For each of the works at issue in this matter, Plaintiff Golden Arrow either holds a copyright registration certificate from the United States Copyright Office or has applied for a registration certificate.

32. For each of the works at issue in this matter, Defendant Ancestry acquired access to them through the use of a web scraper.

33. Plaintiff Golden Arrow did not consent to, authorize, permit, or allow in any manner the said use of Plaintiff's unique and original materials and/or work.

34. Plaintiff Golden Arrow is informed and believes and thereon alleges that said Defendant Ancestry breached Title 17 of the U.S. Code in that it published, communicated, benefited through, posted, publicized, and otherwise held out to the public for commercial benefit, the original and unique work of the Plaintiff's consent or authority and acquired monetary gain and market benefit as a result.

35. Defendant Ancestry copied the protected expression of Plaintiff Golden Arrow's copyrightable works.

36. Defendant Ancestry's copying is more than a trivial amount.

37. Defendant Ancestry knew their acts constituted copyright infringement.

38. Defendant Ancestry's conduct was willful within the meaning of the Copyright Act.

39. As a result of each and every Defendant Ancestry's violations of Title 17 of the U.S. Code, Plaintiff Golden Arrow is entitled to any actual damages pursuant to 17 U.S.C. §504(b) or statutory damages in an amount up to $150,000.00 if willful or up to $30,000.00 if unintentional pursuant to 17 U.S.C. § 504.

40. As a result of the Defendant Ancestry's violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as

reasonable attorney's fees and costs pursuant to 17 U.S.C §505 from Defendant.

WHEREFORE, Plaintiff Golden Arrow prays that judgment be entered against Defendant Ancestry by:

a. Awarding statutory damages pursuant to 17 U.S.C. § 504(c) or actual damages pursuant to (504)(b).

b. Awarding costs of litigation and reasonable attorney's fees, pursuant to 17 U.S.C. § 505;

c. Enjoining the Defendant from further infringement of all copyrighted works of the Plaintiff pursuant to 17 U.S.C. § 502(a); and

d. Providing such other and further relief the Court deems just and proper under the circumstances.

## COUNT II: TRESPASS TO CHATTELS

41. Plaintiff Golden Arrow incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

42. Defendant Ancestry, without authorization, use automated software to extract data from Plaintiff Golden Arrow's website.

43. Through its web scraping, Defendant Ancestry intentionally used or intermeddled with the chattel in the possession of Plaintiff Golden Arrow.

44. The interference was without the authorization of the owner or possessor of the chattel.

45. The interference resulted in harm or damage to Plaintiff Golden Arrow's chattel.

46. The interference deprived Plaintiff Golden Arrow of its use of the chattels for a substantial period of time.

WHEREFORE, Plaintiff Golden Arrow prays that judgment be entered against Defendant Ancestry awarding actual damages; and providing such other and further relief the Court deems just and proper under the circumstances.

Respectfully Submitted,

**OTT LAW FIRM**

*/s/ Mark Edward Blankenship Jr.*
Joseph A. Ott, #67889
Mark E. Blankenship Jr., #73123
3544 Oxford Blvd
Maplewood, MO 63143
Phone: (314) 293-3756
Fax: (314) 689-0080
joe@ott.law
mark@ott.law
*Attorneys for Plaintiffs*