## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

GOLDEN ARROW RESEARCH, LLC, )
)
Plaintiff, )
)                    No. 4:25-CV-582 HEA
v. )
)
ANCESTRY.COM DNA, LLC, *d/b/a* )
*Fold3*, )
)
Defendant. )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant Ancestry.com DNA, LLC's Motion to Dismiss. (ECF No. 12). Defendant moves to dismiss for lack of personal jurisdiction or, alternatively, for failure to state a claim. Fed. R. Civ. P. 12(b)(2) and (6). Plaintiff Golden Arrow Research, LLC, opposes the motion, which is fully briefed and ripe for review. For the reasons below, the Court will grant in part and deny in part Defendant's Motion to Dismiss. The motion will be granted for lack of personal jurisdiction, and it will be denied as moot as to Defendant's argument that the Complaint fails to state a claim.

### I. Background

Plaintiff Golden Arrow Research, LLC ("Plaintiff" or "Golden Arrow") filed suit against Defendant Ancestry.com DNA, LLC, doing business as Fold3

("Defendant" or "Ancestry.com DNA"). Plaintiff alleges that its website was "scraped" and shortly thereafter, materials from its website, including a blog and video, appeared on Fold3's website and in an email that was sent to consumers.  In its Complaint, Golden Arrow brings the following two counts against Ancestry.com DNA: Copyright Infringement pursuant to 17 U.S.C. § 501 (Count I) and Trespass to Chattels (Count II).  For relief, Golden Arrow seeks actual damages.

Ancestry.com DNA responded to the Complaint by filing a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), and in the alternative, for failure to state a claim pursuant to Rule 12(b)(6).  Plaintiff opposes the motion to dismiss on both grounds.  The Court will first address whether Ancestry.com DNA is subject to personal jurisdiction in this Court.

## II. *Allegations in Complaint*

Plaintiff's Complaint contains the following allegations:

Golden Arrow is a genealogy research company that specializes in family, military, and historical records. Ancestry.com DNA is the global leader in family history and consumer genomics.  Plaintiff alleges that Ancestry.com DNA acquired iArchives, a Utah-based digitalization of records service around October 2010. Further, "[b]y incorporating iArchives into its corporate structure, [Ancestry.com DNA] operates a network of genealogical, historical records, and related genetic

genealogy websites, including but not limited to Fold3, a service that provides access to miliary records."  (ECF No. 1 at 2).

According to the Complaint, on June 28, 2020, Golden Arrow created an original video and blog post for its website.  The video and blog post described the process for acquiring and analyzing "Morning Reports," which are daily, company-level Army records from World War I through the Vietnam War.  Golden Arrow's blog post and video are registered with the United States Copyright Office.  Attached to the Complaint are Certificates of Registration from the United States Copyright Office. The certificates show that the blog post and video, both of which are titled "Morning Reports: Locating Your Army Veteran Using WWII Military Records," were authored by Golden Arrow and first published on July 10, 2020.  The effective date of registration for both works was March 17, 2025.

The Complaint alleges that on April 12, 2022, Ancestry.com DNA used an automated web scraper that accessed the entire content of Golden Arrow's website.  Plaintiff alleges, "upon information and belief," that its entire website was scraped and included in Fold3's website.  Golden Arrow asserts that it has "identified a list of [nine] databases that are located on [the] website and that each have information contained within them that could only have originated from Plaintiff Golden Arrow's site."  (*Id.* at 7). On April 27, Fold3 sent out an email that reproduced in full and without attribution Golden Arrow's blog post regarding Morning Reports.

Fold3's website also contained descriptions of particular Morning Reports "that originated" from Golden Arrow's website. (*Id.*) Golden Arrow emailed Fold3 about the descriptions, and they were removed.

## III.   Personal Jurisdiction

### A. Legal Standard

The party seeking to invoke the jurisdiction of a federal court bears the burden to establish that jurisdiction exists. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014).  To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "a plaintiff must make a *prima facie* showing of personal jurisdiction by pleading facts sufficient to support 'a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" *Valez v. Portfolio Recovery Assocs.*, 881 F. Supp. 3d 1075, 1080 (E.D. Mo. 2012) (quoting *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011) (internal quotations and citations omitted)).  A defendant can make a factual challenge to personal jurisdiction, but "[t]he allegations in the Complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Cantrell v. Extradition Corp. of Am.*, 789 F. Supp. 306, 308–09 (W.D. Mo. 1992); *see also Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1076 (8th Cir. 2004).  If the parties present conflicting affidavits, the Court "must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in [its] favor in

4

deciding whether the plaintiff made the requisite showing." *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996) *(citing K-V Pharmaceutical Co.,* 648 F.3d at 591–92). "The evidentiary showing required at the prima facie stage is minimal." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (quotation omitted). "[J]urisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991).

Personal jurisdiction generally takes two forms: "'[G]eneral' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)).[1]  The Court will address each in turn.

---

[1] Recently, the U.S. Supreme Court recognized an often-forgotten third method of obtaining personal jurisdiction over an out-of-state defendant. The Court held that state statutes requiring out-of-state corporations to consent to personal jurisdiction in the state as condition of registering to do business in a state do not violate the Due Process Clause. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023). Neither side asserts that Ancestry.com DNA is subject to such a statute in Missouri.

## IV.  Discussion

### A.    General Jurisdiction

Under the theory of general jurisdiction, also known as all-purpose jurisdiction, "a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." *Dever*, 380 F.3d at 1073 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984)).  However, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  For a corporation, the inquiry is whether the forum is one in which the corporation "is fairly regarded as at home," which is the place of incorporation and principal place of business. *Id.* (internal quotation and citation omitted). For a limited liability company, the Court may consider the state of formation, principal place of business, and place of citizenship of its members in determining whether the company is subject to general personal jurisdiction in the forum.  *Id.  See also Carney v. Guerbet, LLC*, No. 4:18-CV-1494 CAS, 2018 WL 6524003, at *3 (E.D. Mo. Dec. 12, 2018). A business entity that simply operates or does business in many places cannot be deemed at home in all those places for purposes of general jurisdiction. *Daimler*, 571 U.S.  at 139, n.20.

6

The Complaint alleges this Court has personal jurisdiction over Ancestry.com DNA because Ancestry.com DNA is a business entity incorporated in the State of Missouri.  However, Ancestry.com DNA submitted evidence to dispute this alleged fact. According to Ancestry.com DNA's disclosure statement and an affidavit signed by Gordon Atkinson, the Vice President and General Manager, Family History Verticals for Ancestry.com Operations, Inc., Ancestry.com DNA is a limited liability company organized under the laws of Virginia, and its sole member is Ancestry.com Operations, Inc., which is a Virginia corporation with its principal place of business in Utah.  (ECF Nos. 7 and 13, Ex. 1).

Golden Arrow's allegations as to Ancestry.com DNA's citizenship have been controverted with evidence, and Plaintiff has proffered no evidence in response.  The Court finds Plaintiff has failed to meet its burden of establishing Ancestry.com DNA is "at home" and subject to general jurisdiction in Missouri.  *Dever*, 380 F.3d at 1076.  The Court now turns to whether there is specific jurisdiction over this non-resident defendant.

### B.    Specific Jurisdiction

Specific jurisdiction requires the suit to arise out of or relate to the defendant's contacts with the forum state.  *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (citing *Daimler AG*, 571 U.S. at 127).  Plaintiff brings suit under the Copyright Act, which does not confer personal jurisdiction. *N.C.C. Motorsports, Inc. v. K-VA-T Food*

7

*Stores, Inc.*, 975 F. Supp. 2d 993, 997 (E.D. Mo. 2013). Therefore, the existence of personal jurisdiction over a non-resident defendant depends on the long-arm statute of the forum state and the federal Due Process Clause. *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022); *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004).

Missouri's long-arm statute authorizes personal jurisdiction over defendants who commit torts within the state, as to any cause of action arising from the commission of such acts. Mo. Rev. Stat. § 506.500.1. Missouri courts have interpreted the "tortious act" prong to include "[e]xtraterritorial acts that produce consequences in the state." *Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 232 (Mo. 2010). These categories are construed broadly, such that if a defendant commits one of the acts specified in the long-arm statute, the statute will be interpreted "to provide for jurisdiction ... to the full extent permitted by the [D]ue [P]rocess [C]lause." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011) (quotations omitted).

"Due process requires that there be minimum contacts between the nonresident defendant and the forum state such that the assertion of personal jurisdiction is consistent with traditional notions of fair play and substantial justice." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980); *Int'l Shoe*

*Co. v. Washington*, 326 U.S. 310, 316 (1945)). "'Sufficient contacts exist when the defendant's conduct and connection with the  forum state are such that [it] should reasonably anticipate being haled into court there.'" *Id.* (quoting *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994)).  To support a finding of reasonable anticipation, "there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Bell Paper Box, Inc.*, 22 F.3d at 818–19). The "availment" requirement "ensures that a defendant will not be haled into a jurisdiction solely as the result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Fastpath, Inc.*, 760 F.3d at 821.

Courts apply a five-factor test to determine the sufficiency of a non-resident defendant's contacts with the forum state. *Dever*, 380 F.3d at 1073. The five factors are: "(1) the nature and quality of [the defendant's] contacts with the forum state; (2) the quantity of the contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) [the] convenience of the parties." *Id.* at 1073–74 (quoting *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)). The Court is to give significant weight to the first three factors. *Id.* at 1074; *Fastpath, Inc.*, 760 F.3d at 821.

When the cause of action involves a tort, specific jurisdiction can be established over a nonresident defendant by the "effects test." *Calder v. Jones*, 465 U.S. 783, 789-90 (1984).  Under this test, "a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a *prima facie* showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state]." *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010). The Eighth Circuit has construed the Calder test narrowly, holding "absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." *Id.* at 797. "For defendant's tortious conduct to confer personal jurisdiction, there must be a *prima facie* showing that the defendant's intentional acts were 'performed for the very purpose of having their consequences felt in the forum state.'" *Gray v. Hudson*, No. 14CV1183 HEA, 2015 WL 4488143, at *8 (E.D. Mo. July 23, 2015). "The *Calder* test does not supplant the Eighth Circuit's five-part test for personal jurisdiction, but 'requires the consideration of additional factors when an intentional tort' such as copyright infringement is alleged." *N.C.C. Motorsports, Inc.*, 975 F. Supp. 2d at 999 (quoting *Dakota Indus., Inc.*, 946 F.2d at 1391).

Ancestry.com DNA argues that the factual allegations that form the basis of Plaintiff's claims concern conduct by Fold3, not Ancestry.com DNA.  For example,

the Complaint alleges Fold3's website contained information that originated from Golden Arrow's website; that Fold3 sent out an email that reproduced Golden Arrow's blog post; and Fold3's website contained Golden Arrow's descriptions of particular Morning Reports.  In moving for dismissal, Ancestry.com DNA submits evidence, in the form of Mr. Atkinson's affidavit, that Ancestry.com DNA is not doing business as Fold3, but rather Fold3 is operated by a separate legal entity, iArchives, Inc. Therefore, Ancestry.com DNA argues, allegations concerning Fold3 have no bearing whatsoever as to whether the Court has jurisdiction over Ancestry.com DNA, and Plaintiff fails to allege Ancestry.com DNA took any action against Golden Arrow, let alone action in or intentionally directed toward Missouri.

In responding to the motion to dismiss, Golden Arrow neither contests Ancestry.com DNA's evidence nor offered any evidence of its own.  Instead, in its Memorandum in Opposition, Golden Arrow describes its business – including information that is not contained in the Complaint – and it points to the fact that the National Archives and Records Administration retains records relating to the movement of troops during World War II at the National Personnel Records Center in St. Louis, Missouri.  It then argues, in full, the following:

> Here, the allegation is that the Defendant knowingly and deliberately reprinted verbatim a core document created by Plaintiff Golden Arrow that described uniquely and creatively the purposes, uses and applications of the Morning Reports. At the time, Defendant was introducing a product that directly capitalized on its unique authorization to reprint these digital records in a way that reduced a

11

> core offering of Plaintiff's business. Using Plaintiff's own work to do this was uniquely targeted at a business like Plaintiff's that derived its value primarily from its geographic location, and therefore was necessarily aimed at Missouri as a forum state.

(ECF No. 18 at 7).

As Ancestry.com DNA writes in its memoranda, the factual allegations in the Complaint concern Fold3 not Ancestry.com DNA. Defendant has made a factual showing that Ancestry.com DNA does not do business as Fold3, and that it does not operate Fold3. Plaintiff has presented no evidence to dispute Ancestry.com DNA's evidence that Fold3 is operated by a separate legal entity. In fact, Golden Arrow does not even address Ancestry.com DNA's argument. The Court agrees with Defendant that, without more, conduct of another legal entity cannot be attributed to Ancestry.com DNA when examining whether Ancestry.com DNA took action intentionally aimed at Missouri. *Abelesz v. OTP Bank*, 692 F.3d 638, 658 (7th Cir. 2012); *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004).

Even if the Court were to attribute conduct by Fold3 to Ancestry.com DNA, Defendant argues that Golden Arrow has not and cannot point to any factual allegations showing Defendant had contacts with Missouri and, more specifically, that it intentionally targeted Missouri or knew that its actions would cause harm in Missouri. Instead, Defendant argues, Golden Arrow merely describes its own business and connections to the St. Louis area, and there are no allegations that

either Fold3 or Ancestry.com DNA was aware of Golden Arrow's location and its business model, or that either entity intended to cause harm in Missouri. The Court agrees.

Golden Arrow must allege or make a showing that Defendant knew that the brunt of the injury would be felt in Missouri, and that it intentionally targeted the state. *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) (citing *Calder*, 465 U.S. at 789–90). There is nothing in the Complaint or the record that would indicate Defendant knew Plaintiff was located in Missouri, let alone that it intentionally targeted and aimed its alleged infringement at Missouri. Plaintiff contends Defendant is subject to personal jurisdiction in this Court because it caused injuries that were felt in Missouri. But as stated above, "[a]bsent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." *Johnson*, 614 F.3d at 797. In the present case, aside from injury, there are no additional contacts in Missouri, and Plaintiff has failed to establish that Ancestry.com DNA is subject to personal jurisdiction in this Court.

## V. Conclusion

For the reasons discussed above, Plaintiff has failed to make the required, minimal evidentiary showing for the Court to find it has specific personal jurisdiction over Ancestry.com DNA. *Johnson*, 614 F.3d at 794. Defendant presented evidence that it does not operate as Fold3, the entity against which the

allegations in the Complaint are directed.  But even if the Court were to impute Fold3's conduct on Ancestry.com DNA, Plaintiff has not alleged or presented evidence that Defendant targeted or intended to cause harm in Missouri. Consequently, the Court finds Plaintiff has not met its burden to subject Ancestry.com DNA to personal jurisdiction in this Court.  Finding the Court lacks personal jurisdiction over Ancestry.com DNA, the Court denies as moot Defendant's motion to dismiss for failure to state a claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Ancestry.com DNA, LLC's Motion to Dismiss is **GRANTED in part and DENIED in part as moot**.  The motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure is **GRANTED,** and the alternative motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **DENIED as moot.**   [ECF No. 12]

The Court shall issue a separate Order of Dismissal.

Dated this 9th day of October, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE